Good morning, Your Honors. May it please the Court. My name is Hilary Bitashner. I'm with Larson LLP. I, as well as Mr. Lee, who's got his back to the Court right now, are here on behalf of Appellant's Dr. Robert Yang, Yann Robb Medical, HealthPro Capital Partners, and Suncor Care. I would like to reserve five minutes for rebuttal, please. We are before this Court a second time in this SEC enforcement action because the District Court did not correctly apply this Court's instructions following a remand in 2020. That remand occurred because the District Court had wholesale accepted the SEC's request for monetary remedies without determining the proper amounts of disgorgement and civil penalties. This time around, the District Court attempted to make those determinations, but erred in numerous respects that violated controlling law. I intend to focus on three areas during this morning's argument. The first area is the disgorgement amount ordered against Dr. Yang. The second area that I will address is the disgorgement ordered against Relief Defendant HealthPro Capital's partner. Okay, so first, turning to the disgorgement order against Dr. Yang, in this Court's 2020 decision remanding this case, the District Court was instructed to determine whether the disgorgement orders complied with the Supreme Court's decision in Liu v. SEC, yet upon remand, the District Court failed to comply with Liu when it imposed a disgorgement of $524,350 on Appellant Dr. Robert Yang through joint and several liability with Relief Defendant Yanro Medical. This violated Liu in two primary ways. First, under Liu, joint and several liable. At the initial step, the District Court imposed disgorgement in approximately $524,000 on Relief Defendant Yanro. That math underlying that order, in our view, was problematic. However, it's not a focus of this appeal. The reversible error occurred when the District Under Liu, the District Court had to first find that this sum accrued to Dr. Yang. To make this finding, the District Court identified three amounts that it found specifically accrued to Dr. Yang. $500,000 towards the purchase of a medical building, another $126,000 towards the purchase of that same building, and $65,000 towards his personal taxes. That total is approximately $691,000. Because that figure added up to more than $524,000, the District Court concluded that at least $524,000 accrued to Dr. Yang. The problem is with that calculation that the District Court forgot to make a necessary deduction. The District Court forgot to back out the $400,000 that the SEC recovered through selling that medical building. Now, I know the math is getting very specific, but the big picture is there are three costs that specifically accrued to Dr. Yang. Those three costs, two of them had to do with that medical building, and the third had to do with personal taxes. Under Liu, and under prevailing law, the amount recovered by the SEC had to be backed out of the disgorgement amount that accrued to Dr. Yang. That didn't happen. Had that happened, the total— What happened to the $400,000? That $400,000 was recovered through the receiver by the SEC. It was a sale of Yang's home? A sale of the medical building. Of the medical building. Owned by Yanrop. Where money from this issue had been diverted? Yes, Your Honor. But that money was recouped by the SEC. So under prevailing law and disgorgement law, the money that's recouped is not double counted. It is pulled back out. So in this case, it's been reduced to $524,000. The $691,000 was essentially reduced to the $524,000, correct? Well, because it was joint sum of liability to Yanrop's liability, and Yanrop's liability was determined to be $524,000, yes, it was for that piece of it. Although, of course, Dr. Yang was— Yanrop is not a wrongdoing defendant. He was a relief defendant, correct? Correct. So I'm still curious. The SEC sold the money, so how was it accounted for then? The $400,000? Yeah. The $400,000 is accounted for because the receiver took control of that property. That property was sold, and the $400,000 was— Just there? Oh, I'm sorry, Your Honor. I think I misunderstood your question. I think the math that the SEC is putting forward is that the $400,000 is also accounted for. However, the $400,000 is not tethered— Right. How does the SEC contend that it's been accounted for? That's what you can figure out. I don't dare speak for the SEC, but my understanding is that the $400,000 is accounted for based on the removal from the larger amount of money that Yanrop was held responsible for, for the medical building or the monies used to spend—spent on the medical building. So it's our position that in terms of figuring out disgorgement for Dr. Yang, the money and the benefits that specifically flowed to him are ripe for joint and several liability. However, just as those are ripe for joint and several liability, the offset related directly to those line items should be deducted from those line items. Once they're deducted, the joint and several liability for Dr. Yang should have been calculated to be $291,000. Now let me ask you this. You said at the outset that the district court forgot about this $400,000. Or overlooked the $400,000. Perhaps the better way of saying that, Your Honor, is that the district court did not overlook the $400,000. And so in effect, that $400,000 was used to the benefit of Yanrop in terms of the calculations. However, it was completely divorced from the connection to those line items. Okay. There's a second— That was helpful. Okay, great. There's a second violation with respect to this particular aspect of the disgorgement order against Dr. Yang, the disgorgement order through the joint and several liability. And the second violation with respect to Liu is that in effect, what happens here is the district court does the math calculation in terms of backing out the $400,000. But however, does not in its mind, in its view, apply the net profits limitations under Liu. Finding that Yanrop, as a relief defendant, is not entitled to the protections of Liu v. SEC. So that calculation done in terms of the Yanrop relief defendant is not subject to a Liu analysis. However, through the joint and several liability, that amount is then connected to a primary real defendant, an actual defendant, Dr. Yang. It's clear under Liu that Dr. Yang, as an actual defendant, is entitled to the protections of Liu. However, by going through this process of determining the liability of Yanrop and then associating that liability through joint and several liability to Dr. Yang, the district court essentially bypassed the Liu protections with respect to Dr. Yang. So that is yet a second problem with the calculations, that the district court did not take into account when it connected the Yanrop liability to Dr. Yang, it did not take into account the Liu protections. So what does that get you? Specifically in terms of the math here, Your Honor? Specifically where it gets us is, for one, that medical building, the cost of that medical building to Yanrop was 500,000. The sales price was 400,000. Now, the sales price of 400,000, by definition, I think it's beyond dispute, needs to be backed out of the calculation because it's back in the hands of the receiver and the SEC. However, there's a $100,000 delta there, if nothing else. That $100,000 delta is a legitimate business expense. Had the court done the calculations in terms of the Liu protections with respect to Dr. Yang for this piece of the disgorgement, that $100,000 would have been taken into account. However, it was not taken into account. So in terms of large line items, that is a significant large line item in and of itself that was not given due consideration. So the $100,000 should have been deducted. In addition, Your Honor, to the $400,000. Yes, that is correct. Now, if I may, I'd like to turn to the balance of the disgorgement that was the disgorgement order against Dr. Yang that had nothing to do with the joint and several liability through Yanrop. And that is the $1.4 million in disgorgement that was ordered against Dr. Yang. It's our position that that order was clearly erroneous. The district court found that Dr. Yang had a $1.4 million in disgorgement based on investor funds being used to repay personal loans to friends and family. This finding was both judicially stopped and factually erroneous because it is directly in contradiction to the amended complaint. In this case, the consent agreement binds both Dr. Yang and the SEC to accept the allegations of the amended complaint as true for purposes of determining monetary remedies. The amended complaint is clear that Dr. Yang used approximately $1.14 million to pay off the purported loans in question. That amount, the $1.14 as opposed to the $1.4, the $1.14 is confirmed through the receiver's report which identifies the repayment of loans as $1.14 million. There can be no question that the very specific number in the amended complaint, the $1.14 million, derives from the receiver's report. Is that argument based upon the transfer to the investor Lee Huey, if I'm pronouncing the name correctly, H-U-I, in terms of there's essentially a $270,000 discrepancy and there's apparently, the record reflects that there was a $250,000 transfer to essentially, I gather, I'm not sure if he's a relief defendant or not. He's not a wrongdoing defendant. And is that where the thrust is of that $270,000 discrepancy, that transfer, the $250,000? Yes, Your Honor. I believe in terms of the receiver's report, that is the delta, in essence, the $250,000. I couldn't tell if I made a mistake in calculating $250,000 as opposed to $270,000, but there's certainly, that would be what you're calling the delta. That's the nut of it right there. That's the thrust of what you're saying is having to do with the transfer to the investor, correct? Yes, Your Honor. There's an infusion of $250,000 from Lee Huey, and then there is a repayment of that. Lee Huey, I mispronounced his name. I apologize. Your Honor may be right, I may be wrong. I think you're better at that than I am. But that is the delta, and that delta, I think, is supported by the receiver's report. However, equally importantly, in the amended complaint, which is to be accepted as true by all parties, the amended complaint has the number as 1.14, which is consistent with backing out that $250,000. Yang, did your client raise that issue before the district court? Yes, Your Honor. That was raised. And so in addition to it being factually supported, and so therefore clearly erroneous to later inflate the number from 1.14 to 1.4, it is also inconsistent with the agreement between the parties. And the SEC has been quite clear that Dr. Yang is to be held responsible and to accept each and every factual allegation in the amended complaint as true. The same goes for the SEC. The SEC, likewise, should be held to the factual allegations in the amended complaint. However, the SEC is taking the position that when it is beneficial to the SEC, then the amended complaint should be honored 100%. However, when it is not beneficial to the SEC and detrimental to Dr. Yang, that there can be this waiver from or movement away from the very clear allegations in the complaint, which is $1.14 million. Counsel, you read the agreement as basically having set a cap, like a fixed cap, on what the SEC would be permitted to seek in terms of disgorgement from Dr. Yang? Is that how we're supposed to read it according to you? Your Honor, I do not believe that we use the term cap in there. However, it is a very specific factual allegation. The allegation does not say at least $1.14 million. The allegation says approximately $1.14 million. And so the SEC, in order to try to have its cake and eat it too, so to speak, says that we should really infuse the word approximately with a lot of power in this circumstance, that approximately $1.14 million should be viewed as essentially $1.14 million. In my mind, that is a recognition that there is a problem here when the SEC agrees to $1.14 million with respect to that piece of the disgorgement and then moves away from it in such a large amount. I do see, Your Honor, that I have 3 minutes and 30 seconds, so unless the Court has any questions right now, I'd like to reserve the balance of my time. That's fine. Thank you. We'll hear from the SEC. Good morning, Your Honors, and may it please the Court, Paul Alvarez for the Securities and Exchange Commission. Your Honors, the District Court's Remedies Order on Remand was a reasonable exercise of its broad discretion in fashioning remedies in securities law cases. And as this Court considers Mr. Yang's various challenges to that order, I think it's important to keep in mind a number of things. First, the undisputed facts here. The undisputed facts are that Mr. Yang is a primary wrongdoer because he obtained $19.5 million of ill-gotten investor funds via Sienta-based securities fraud. It is also undisputed that Mr. Yang received and controlled, directed the expenditure and dissipation and misuse of all of those funds, and there can be no dispute that Mr. Yang was unjustly enriched by the entirety of that amount. Equity thus demands that Mr. Yang disgorge the entirety of that amount, less any legitimate business expenses. And on the issue of legitimate business expenses, it's important to bear in mind that none of the expenses that Mr. Yang is being ordered to disgorge here were legitimate business expenses. Therefore, they were all his net profits from wrongdoing under Liu, and therefore, it was appropriates that ordered him to disgorge those net profits from his wrongdoing. I understand how that argument would carry in terms of the $100,000 in connection with the $500,000 just referenced by Ms. Potashner, but as to the raw $400,000 figures to the sale of a building, that is clearly hard dollars that were gained from the sale of a building. Mr. Yang's counsel is essentially saying there's a double recovery here. There's clearly $400,000 that was recovered in this matter, correct? I disagree with that. No, there was not a double recovery here. There was clearly $400,000 recovered by the receiver, correct? Absolutely, and he was credited, and I'd like to unpack that. Okay, all right. So number one, the point that she's talking about is the portion of the $19.5 million of ill-gotten investor funds that Mr. Yang dissipated to YANROB. It was just over $1.1 million of funds. Now, Mr. Yang has an independent obligation to disgorge those funds because as a primary wrongdoer, he is obligated to disgorge all net profits, whether he has dissipated those or whether he has held on to those. So the $1.1 million that Mr. Yang is ordered to disgorge jointly and separately with YANROB is that portion of the funds that he dissipated, right? YANROB being a relief defendant. YANROB being a relief defendant. Not a wrongdoing defendant. That's exactly right. So Mr. Yang is on the hook to disgorge the $1.1 million because he's the primary wrongdoer. Now, YANROB is obligated to disgorge those funds independently because it received ill-gotten funds and it has no legitimate claim to those ill-gotten funds. So you have YANG and YANROB each have independent obligations to disgorge the $1.1 million, okay? And jointly and separately liable, the court holding it jointly and separately liable for each dollar that Mr. Yang pays in, YANROB receives a credit and vice versa. So there is no double recovery. Now, the receiver did take the $400,000 and credit that amount against the amounts that Mr. Yang and YANROB jointly are obligated to disgorge. That net ends up to be approximately, and we set forth this in detail in footnote 7 of our brief. I would refer the court to that. But I'm happy to look at it real quick. Footnote 7 here says that there were approximately $1.1 million of the amount came from defrauded investors and the $524,000 joint award that remains is the difference between the amount that Mr. Yang transferred to YANROB and the $713,000 in funds the court deducted. $577,000 includes that $400,000 of the sale of the building. So Mr. Yang and YANROB received a credit against their joint and several obligation, and thus the remaining $524,000 is what they each independently owe on the money, the portion of the ill-gotten funds that Mr. Yang transferred to YANROB. So it's simply incorrect that there is a double recovery or that the district court didn't account for that. It did, and the receiver's report bears that out as well. And on the issue of Mr. Yang's individual disgorgement, unless the court has any further, actually I'd like to discuss, if I may, the notion of Liu preventing Mr. Yang from being held jointly and severally liable with a relief defendant, YANROB. Mr. Yang's argument misapprehends Liu. What Liu was discussing was the use of joint and several liability as a means of expanding a wrongdoing defendant's disgorgement obligation to include not only those ill-gotten funds that the wrongdoing defendant had accrued to him, but to include the ill-gotten funds that had accrued to another defendant. And the Supreme Court stated that it was only appropriate to use joint and several liability as a means of expanding disgorgement obligations where the evidence shows that the two wrongdoing defendants were engaged in concerted wrongdoing together. But here, there is no expansion of disgorgement liability as to either Mr. Yang or YANROB for the simple reason that Mr. Yang, as a primary wrongdoer, is obligated to disgorge all net profits from his wrongdoing, which includes all of the funds that he dissipated to YANROB. And YANROB is only obligated to disgorge those ill-gotten funds that it received from Mr. Yang to which it had no legitimate claim. And there can be no dispute here that the remaining $524,000 approximately satisfies those criteria. So Liu is simply inapposite here and does not prevent Mr. Yang from being held liable jointly and separately. And the record below reflects that YANROB did in no way offer alternative sources for those funds. There was no dispute, apparently. That's correct. That's correct. They have no legitimate claim to those funds. I think the record reflects that they offered no consideration for those funds. And indeed, the fact that Mr. Yang is transferring these investor funds, which were supposed to be used for the building of medical facilities, he transferred them to his own medical practice. This was not at all legitimate. Mr. Yang's medical practice, YANROB, is his name backwards. So not only did he have the control of the money in dissipating it to YANROB, but he controlled it once it went to YANROB as well and spent it in ways that investors clearly did not have any idea he would be spending it. So there can be no dispute. Mr. Yang's first name is Robert, is that correct? Robert Yang, yes. I wasn't sure if he called it YANROB because he was prescient perhaps about what was occurring. I don't know. I don't know. That was a curious thing. I'm glad you clarified that for me. I said YANROB. It was like he was announcing to the world he was robbing people, but obviously I was mistaken. All right. Go ahead. Just to break the tension here a little bit. Go ahead. I'm sorry. No, absolutely. And so, Your Honor, if the court has any further questions on joint and several liability, I'd have to answer that. No, no. But I'd like to turn, if I may, to the individual disgorgement challenge. There is simply no merit to the argument that the parties had agreed that there would be a cap on the disgorgement that the commission could seek and that the commission thus was barred or even judicially stopped from seeking disgorgement amounts beyond those alleged in the amended complaint. Indeed, the consent agreement, as Judge Watford mentioned, the consent agreement really explicitly states that the district court would determine the disgorgement amount on the basis of the evidence presented. And that's exactly what happened here. Mr. Yang and the commission had the opportunity to present evidence to the district court. And on the basis of the evidence presented, the district court found that Mr. Yang used $1,414,250 of investor funds for the purpose of paying down personal loan obligations to friends and family. And I want to point something out here. Counsel alluded to the idea that the commission is trying to have it both ways, but that's not at all the truth. The commission was bound by what the evidence showed. If the evidence had showed a number that was lower than the amount alleged in the amended complaint, the commission couldn't have run back and said, well, no, no, the amended complaint says 1.14. We're entitled to at least 1.14. We, the parties, agreed that the evidence would determine what the disgorgement amount was. And that's exactly what the district court did here. And the evidence is undisputed here that Mr. Yang used that amount for personal loans. And that, again, was not a legitimate business expense. It is net profits of Mr. Yang's wrongdoing, so he should have to disgorge those amounts. Unless the court has any further questions on the issue of Mr. Yang's individual disgorgement, I'd like to briefly discuss the civil penalty challenges. Mr. Yang argues that the district court grossly miscalculated the statutory maximum and used that purportedly erroneous figure as an incorrect ceiling against which it compared the $1.9 million civil penalty that it imposed. But that simply is incorrect. That argument ignores Exchange Act Section D3, which permits the district court to impose a civil penalty in the amount of the wrongdoing defendant's gross pecuniary gain as a result of his securities law violations. Mr. Yang? Can I jump in just to ask you a pretty focused question on this point? Let's say that we did not agree with your reading of the statute that it allowed a per victim calculation of the penalty and that we instead agreed with Dr. Yang's reading that it's per scheme at best. And so the maximum under that calculation would be far less than the $1.9 million. If we were to read the statute that way, would we need to remand because the argument is that the district court was unduly influenced by the thought that, wow, the statutory max is $6 million and something. And so I'm really cutting him a break by imposing only a $1.9 million penalty. Would we have to remand for the district court to redo the analysis in that scenario? No, I don't believe so, Your Honor, and for the reasons that I was explaining. The gross pecuniary gain amount, the court had the power to impose a penalty against Mr. Yang in the amount of his gross pecuniary gain from his violations. And his gross pecuniary gain from his violations is $19.5 million. That's the amount of ill-gotten investor funds that he obtained via scienter-based fraud. So whether or not the statutory maximum against which the court was measuring the $1.9 million penalty was permissible is almost irrelevant because the court could have imposed a statutory penalty that was three times higher. So the $1.9 million penalty that was imposed, and that was in the amount equivalent to the amount he was ordered to disgorge, was certainly a less severe penalty than the $19 million penalty that was permitted by statute here. So I don't think this court needs to remand for the court to reassess that because the point the court was trying to make was trying to follow this court's instructions in the first order and to apply the Murphy factors. And the court did take into account Mr. Yang's acceptance of responsibility. The court did take into account Mr. Yang's likelihood of future violations in imposing a less severe penalty. And indeed it was a less severe penalty than it could have imposed. It's one-tenth of the maximum penalty it could have imposed. So if anything, the court was basing $1.9 on a low maximum statutory penalty. And we certainly believe, as we stated in our brief, that that is an appropriate measure to base statutory penalties on the basis of defrauded investors. So I certainly want to make sure I am clear that we are not conceding that that was error. But assuming that your question, that you do disagree with that, Your Honor, I do not think that remand is appropriate here because the maximum amount permissible under the statute was his gross pecuniary gain, that being $19.5 million. And by comparison, that shows both that the court reasonably imposed a less severe penalty than it could have and necessarily shows that the civil penalty that was imposed of $1.9 million was not constitutionally excessive. Unless this court has any further questions, we would ask that the court affirm the remedies order on remand. Thank you. I'd like to first address this new figure of $19 million for the gross pecuniary gain in terms of the civil penalties. That is literally the first time that I believe that the Commission has made that argument, that that is the calculation of gross pecuniary gain. I think it's quite clear in the district court's order in this matter, which is that the pin site would be the ER21, 1ER21, that the court found that the gross pecuniary gain for each defendant was appropriate and then set the civil penalty at $1.9 million. So it's the court's finding that the gross pecuniary gain with respect to Dr. Yang was $1.9 million. The court did not make a calculation that it was $19 million. So $19 million is not one of the alternative statutory maximums here. What we're talking about in terms of statutory maximums is the gross pecuniary gain, in this case the $1.9 million, or the calculation that's provided a set number of times multiplied by the number of offenses. That is the alternative. And it's our argument that— I think your reading is correct. That was certainly my understanding as well. But I think my question still remains, though. Is a remand necessary? Because ultimately, even if you're right about the statute not permitting a per-victim basis for calculating the penalty, that's not what the district court ultimately imposed. And so we still would have to read the order as somehow being unduly swayed by that higher number when— I guess I read the order as just the district court coming to the conclusion, however it got there, that $1.9 was the appropriate figure. And there's no dispute if we reject your other challenges to the disgorgement amounts. There's no dispute that $1.9 would be permissible as an alternative, right? I do believe that $1.9 would be the statutory maximum. However, I think by just accepting that number, irrespective of the other signpost, which is the calculation of $150,000 or $160,000 by the number of offenses, which in this case should be set at $470,000, by disregarding that piece of it, this court would essentially be disregarding the Murphy analysis. The Murphy analysis by the district court was that under the five factors of Murphy, that three of those factors at least suggested a more mitigated civil penalty. And based on the court's finding in terms of the majority of the Murphy factors, the court found that the more mitigated of the statutory maximum should apply. However, in this case, when the court was looking at the more mitigated, the court was weighing between $6 million and $1.9 million. When the court then applied the Murphy calculation and the Murphy analysis, the court was swayed that the lesser of the two should apply. So, in putting the correct numbers before the court of $470,000 versus even accepting the $1.9 million as the gross pecuniary gain, based on the district court's own analysis, the more mitigated of the two should be applied. So, should this court agree with that perspective in terms of what the options are in terms of the statutory maximum and conclude that the options are $1.9 million or $470,000, then using the court's findings with respect to the Murphy factors, this court need not remand because this court could simply find that $470,000 is the appropriate civil penalty in light of the court's analysis below. Okay. Thank you, Ms. Potash. We appreciate both arguments this morning and the matter is submitted at this time. Thank you.
judges: PAEZ, WATFORD, Bennett